ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2011 FEB 25  AM 11: 52

DEPUTY CLERK _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FIDELITY & DEPOSIT COMPANY OF
MARYLAND,

    Plaintiff,

v.

MURILLO MODULAR GROUP, LTD.,
NM & SM DEVELOPMENT, LTD.,
LONESTRELLA, LLC,
ALLO CONSTRUCTION & ENGINEERING,
LLC D/B/A ACE MECHANICAL,
NICK L. MACKIE, Individually, KRISTI
MACKIE, Individually, SUSAN MURILLO,
Individually, SALVADOR V. MURILLO,
Individually, and LEONARD MURILLO,
Individually,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. _____

**3-11CV0382-M**

#47247

## FIDELITY & DEPOSIT COMPANY OF MARYLAND'S
## VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR
## TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
## AND OTHER EQUITABLE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Fidelity & Deposit Company of Maryland ("F&D") hereby complains of

Defendants Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC,

Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie,

Individually, Kristi Mackie, Individually, Susan Murillo, Individually, Salvador V. Murillo,

Individually, and Leonard Murillo, Individually (the "Defendants") as follows:

FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED ORIGINAL COMPLAINT AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND OTHER EQUITABLE RELIEF
3328535.6/SP/33310/0639/022411

PAGE 1

I.
## INTRODUCTION

1.      This is a dispute arising from the failure of a construction contractor to pay its subcontractors, directly resulting in over $1.3 million in claims on a payment bond issued by F&D.   In failing to pay its subcontractors, Defendants breached their obligations under the underlying construction contract and their obligations under an agreement of indemnity in favor of F&D.   Despite demand, Defendants have wholly failed to indemnify and hold F&D harmless from loss resulting from their breaches. Failing to use construction proceeds to pay subcontractors also constituted a breach by the Defendants of their fiduciary duties owed to F&D under the agreement of indemnity and other law, as well as their obligations to the United States government, the owner of the construction project.   Thus, F&D has brought this action against the Defendants for breach of the agreement of indemnity, breach of fiduciary duty, and other legal relief. F&D also seeks a temporary restraining order and preliminary injunction barring the Defendants from dissipating and/or secreting assets that may be used to satisfy their obligations to F&D, barring the Defendants from further secreting key information and documentation from F&D, ordering specific enforcement of various provisions of the agreement of indemnity, and providing other equitable relief to F&D.

II.
## PARTIES

2.      Plaintiff F&D is a corporation incorporated pursuant to the laws of the State of Maryland with its principal place of business in Schaumburg, Illinois.

3.      Murillo Modular Group, Ltd. ("Murillo") is a domestic limited partnership in the State of Texas with its principal place of business in Carrollton, Texas.   The partners

of Murillo are Salvador V. Murillo and Nick L. Mackie, both citizens and residents of Texas. Murillo may be served with process by serving its registered agent for service of process, Salvador V. Murillo, at 4105 Equestrian Court, Flower Mound, Texas 75028 or 1400 Bradley Lane, Carrollton, Texas 75007.

4.      NM & SM Development, Ltd. ("NMSM") is a domestic limited partnership in the State of Texas with its principal place of business in Carrollton, Texas. The partners of NMSM are Salvador V. Murillo and Nick L. Mackie, both citizens and residents of Texas. NMSM may be served with process by serving its registered agent for service of process, Nick L. Mackie, at 4704 Pacer Way, Flower Mound, Texas 75028 or 1400 Bradley Lane, Carrollton, Texas 75007.

5.      Lonestrella, LLC ("Lonestrella"), is a domestic limited liability company in the State of Texas with its principal place of business in Carrollton, Texas. The members of Lonestrella are Salvador V. Murillo and Nick L. Mackie, both citizens and residents of Texas. Lonestrella may be served with process by serving its registered agent for service of process, Salvador V. Murillo, at 4105 Equestrian Court, Flower Mound, Texas 75028 or 1400 Bradley Lane, Carrollton, Texas 75007.

6.      Allo Construction & Engineering, LLC d/b/a Ace Mechanical ("Ace") is a domestic limited liability company in the State of Texas with its principal place of business in Ft. Wayne, Indiana. The members of Allo Construction are Allen Dennison and Kenny Dennison, citizens and residents of Indiana, and Jeff Mackie, a citizen and resident of Texas. Ace may be served with process by serving its registered agent for service of process, Nick L. Mackie, at 1400 Bradley Lane, Carrollton, Texas 75007.

7.      Nick L. Mackie is an individual citizen of Texas who may be served with process at 4704 Pacer Way, Flower Mound, Texas 75028.

8.      Kristi Mackie is an individual citizen of Texas who may be served with process at 4704 Pacer Way, Flower Mound, Texas 75028.

9.      Susan Murillo is an individual citizen of Texas who may be served with process at 4105 Equestrian Court, Flower Mound, Texas 75028.

10.     Salvador V. Murillo is an individual citizen of Teas who may be served with process at 4105 Equestrian Court, Flower Mound, Texas 75028.

11.     Leonard Murillo is an individual citizen of Texas who may be served with process at 4105 Equestrian Court, Flower Mound, Texas 75028.

12.     Defendants except Leonard Murillo are referred to herein collectively as the "Indemnitor Defendants."

## III.
## JURISDICTION

13.     This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 as this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## IV.
## VENUE

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this judicial district.

## V.
## FACTS

### A.    Background

15.    Murillo is a construction company engaged in government contracting, including the provision and installation of modular buildings on military bases and other government properties.  In the course of its business, Murillo's work would generally include connecting the modular buildings to foundations, utilities, and the like, as well as performing finish out work and attaching brick and other materials to make the modular structures permanent.  F&D is a surety company engaged in the business of issuing bonds of all types, including payment and performance bonds relating to government construction projects.

16.    The U.S. Army Corps of Engineers (the "Corps") was tasked with constructing a child development center at Fort Benning, Georgia (the "Project"). Murillo agreed to build the Project for the Corps under a contract numbered W912HN-07-D-0044-0004 and dated September 30, 2008, in the amount of $3,699,987.82. (the "Contract").[1]

### B.    The Agreement of Indemnity and the Bonds Issued by F&D

17.    On or about June 30, 2008, the Indemnitor Defendants executed an Agreement of Indemnity in favor of F&D (the "Agreement of Indemnity").[2]    The Agreement of Indemnity was executed and delivered to F&D as consideration for the

---

[1] A copy of the cover sheet for the Contract, stating some essential information, is attached hereto as Exhibit A and is incorporated herein for all purposes. Due to its voluminous nature, a full copy of the Contract is not included herewith.
[2] A copy of the Agreement of Indemnity is attached hereto as Exhibit B and is incorporated herein for all purposes.

issuance of certain surety bonds on behalf of Murillo relating to the Project and the Contract.

18.     In reliance upon the Agreement of Indemnity, and at the request of the Defendants, F&D issued payment and performance bonds for the Project and the Contract, both numbered PRF 8943839, naming Murillo Modular Group, Ltd. as the principal and the United States of America as the obligee (collectively, the "Bonds," individually the "Payment Bond" or the "Performance Bond").[3]

19.     In the Agreement of Indemnity, the Indemnitor Defendants agreed as follows, in relevant part:

## INDEMNITY

SECOND:  The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

---

[3]  A copy of the Bonds are attached hereto as Exhibit C and incorporated herein for all purposes.

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

## ASSIGNMENT

THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter, incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools, drawings, plans, designs, architectural works, documents, specifications, models and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for, held, intended for or chargeable to any and all contracts referred to in the Bonds, materials which may be in the process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds

and all other contracts whether bonded or not in which the Contractor has an interest; (f) A license to use, without cost to the Surety, any interest the Contractor may have in or and to all copyrights, inventions, applications, patents, or any other form of intellectual property, and any improvements thereon, which now, or may hereafter, relate to any and all of the contracts referred to in the Bonds or elsewhere, or which are not, or may hereafter be, embodied in any drawings, plans, designs, architectural works, documents, specifications, models, machinery, equipment, plants, processes or other materials referred to in section (b) of this paragraph.

## TRUST FUND

FOURTH:  If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

....

## BOOKS AND RECORDS

NINTH:      At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

## C.     Claims on the Payment Bond

20.     Murillo failed to pay its subcontractors on the Project, and those subcontractors began to pursue with F&D claims on the Payment Bond for the debts Murillo owed to them under the Contract.  Claims have been made on the Payment Bond totaling approximately $1.3 million.  As a result of such claims, F&D has to date incurred losses, fees, and other expenses, in excess of $800,000.00.  Hundreds of thousands of dollars in claims remain outstanding, and claims continue to be made on the Payment Bond, with tens of thousands of dollars in claims received as recently as February 7, 2011.

21.     Once in receipt of the claims on the Payment Bond, F&D was entitled to all remaining Contract proceeds in the custody of the United States by virtue of its rights under the Agreement of Indemnity and its rights to legal and equitable subrogation. Thus, F&D appropriately requested the United States to direct any remaining Contract proceeds to F&D instead of Murillo.   Despite the significant claims by unpaid subcontractors and suppliers who provided labor and material to the Project, only $124,119.17 in Contract proceeds remained that had not already been paid to Murillo. The United States paid that sum to F&D pursuant to F&D's legal and equitable rights. Plainly, the amount of claims paid by F&D to date, let alone the total amount of claims made under the Payment Bond, greatly exceeds the Contract balance that F&D has received from the United States.   Thus, F&D has already sustained hundreds of thousands of dollars in net loss.

## D.   Misappropriation of Contract Proceeds by Murillo

22.   Under the Contract, as well as Federal Acquisition Regulation Subpart 52.232-5(c) and other law, in order to be paid under the Contract, Murillo and one or more of the Defendants, including Defendant Leonard Murillo, who at relevant times controlled the finances of Murillo with respect to the Project and otherwise, was required to certify to the United States that its subcontractors on the Project had been and would be paid.   Murillo and one or more of the Defendants, including Defendant Leonard Murillo, made such certifications to the United States and, in reliance on such certifications, the United States paid Murillo all but $124,119.17 of a contract worth nearly $3.7 million.   Yet $1.3 million in claims have been made under the Payment Bond, representing funds that Murillo failed to pay its subcontractors on the Project from the Contract proceeds despite its certifications to the United States to the contrary. Such false certifications are violations of the False Claims Act, 31 U.S.C. §§ 3729-36, and a clear breach of the Defendants' fiduciary obligations to F&D set forth in the Agreement of Indemnity and existing at law.   In any event, several hundred thousand dollars, and possibly over $1.3 million, of the Contract's $3.7 million in proceeds were paid to Murillo but not paid by Murillo to its subcontractors on the Project as required by the Contract, the Agreement of Indemnity, and other law.

## E.   The Defendants' Obligations to F&D

23.   As a direct result of Defendants' actions, which directly led to the claims on the Payment Bond, F&D has incurred net losses and expenses to date in excess of $675,000.00 after taking account of the Contract balance paid to F&D.   Taking into account the hundreds of thousands of dollars in outstanding claims on the Payment

Bond and the likelihood of future claims, F&D currently anticipates that total losses, costs, and expenses will be as much as $1,035,001.00. F&D has set reserves in that amount and may have to raise those reserves in the near future.

24.     Pursuant to its rights under the Agreement of Indemnity and other law, F&D has demanded that the Indemnitor Defendants indemnify it for its losses to date and that the Indemnitor Defendants deposit funds as collateral with F&D in the amount of $1,035,001.00 to protect F&D from loss,[4] but the Indemnitor Defendants have wholly failed and refused to do so, in breach of the Agreement of Indemnity and other obligations imposed on them by law.

25.     Under the Agreement of Indemnity, F&D has a secured interest in funds in the possession of, or which may come into the possession of, the Defendants as identified therein, and a right to collateral, indemnification, access to books and records, and other relief. Moreover, under the Trust provision of the Agreement of Indemnity, quoted above, F&D is the equitable owner and beneficiary of funds in the possession of the Indemnitor Defendants, or that may come into their possession, that are trust funds as identified in the Agreement of Indemnity. F&D also has other rights in assets of the Defendants, as explained below. Finally, F&D is a potential judgment creditor of the Defendants, and thus has a contingent interest in their assets to the extent not otherwise secured.

---

[4] A copy of F&D's letter to the Indemnitor Defendants demanding collateral and indemnification under the Agreement of Indemnity is attached hereto as Exhibit D, and is incorporated here in by reference for all purposes (the "Demand Letter").

**F.     Other Murillo Contracts**

26.     Apart from the Contract, Murillo entered into a so-called "Teaming Agreement" with Atlantic Marine Construction Co., Inc. ("AMC") in connection with a group of government construction contracts referred to hereinafter as the "AMC Contracts." F&D did not issue any bonds in connection with the AMC Contracts.

27.     Murillo failed to pay some subcontractors on one or more of the AMC Contracts.  As a result, AMC began withholding payments from Murillo.  Murillo then filed suit against AMC on one of the AMC Contracts, alleging breach of contract against AMC and a purported payment bond surety associated with the contract at issue, and making a quantum meruit claim (the "AMC I Lawsuit").[5]   According to Murillo's allegations in the AMC I Lawsuit, the Teaming Agreement operated as follows:

> AMC agreed to serve as designated prime contractor on projects awarded by the government and Murillo agreed to serve as designated subcontractor...As part of the teaming agreement, the parties agreed...that AMC would enter any prime contracts with the government, secure payment and performance bonds as necessary, and appoint a project manager to interface with government personnel and Murillo. Murillo would perform and provide specific labor and material requirements of the prime contract, such as day-to-day site work, utility work, construction and finishes...The parties also agreed that Murillo's payment on each project would consist of two components: (1) payment of costs incurred by Murillo, including direct costs and costs incurred to subcontractors and vendors; and (2) payment of a percentage share of overall project profit.   Because Murillo would supply designs and construction techniques and perform the bulk of the work on each project, the parties agreed that Murillo would receive 60% and AMC would receive 40% of any profit generated on a project.  The parties further agreed that Murillo would not include a profit markup in its cost billing to AMC.

28.     In the AMC I Lawsuit, Murillo sought damages in excess of $1 million.

---

[5]  *United States ex rel. Murillo Modular Group, Ltd. v. Atlantic Marine Construction Co., Inc., et al.*, No. 3:2010 cv 05504, United States District Court for the Western District of Washington, Tacoma Division.

29.     Murillo also filed another suit against AMC on other AMC Contracts (the "AMC II Lawsuit").[6]  In the AMC II Lawsuit, Murillo again alleged claims for breach of contract against AMC and a purported payment bond surety associated with the contracts at issue, a claim for quantum meruit, and a claim for fraud against AMC.  In the AMC II Lawsuit, Murillo sought economic damages of approximately $18.9 million.

30.     On December 10, 2010 the AMC I Lawsuit was dismissed pursuant to a motion stating that the case had been settled by the parties.  On November 23, 2010, the AMC II Lawsuit was also dismissed pursuant to a motion stating that the case had been settled by the parties.  Murillo, through counsel, has repeatedly indicated that payments of potentially millions will be made to Murillo in the near future (to the extent not already paid) pursuant to such settlement.  Under the Agreement of Indemnity, F&D has a secured interest in any such settlement proceeds paid to Murillo or any of the Indemnitor Defendants.

### G.     F&D's Rights Under a Release and Assignment from a Payment Bond Claimant

31.     One of Murillo's subcontractors on the Project that made a claim on the Payment Bond was Mark Line Industries, Inc. ("Mark Line").  Mark Line did work on the Project and the AMC projects and was not paid by Murillo.  In an attempt to resolve this debt, Murillo executed two promissory notes in favor of Mark Line: one in the amount of $743,397.50 (the "$743,397.50 Note") and the other for $3,802,532.00.  Both were

---

[6]  *United States ex rel. Murillo Modular Group, Ltd. v. Atlantic Marine Construction Co., Inc., et al.*, No. W09 CA 282, pending before the United States District Court for the Western District of Texas, Waco Division.

secured by a Limited Personal Guaranty from Salvador V. Murillo (the "Guaranty").[7]

Mark Line sued Murillo and F&D for payment for labor and materials it supplied to the

Project (the "Mark Line Georgia Lawsuit").[8]  Mark Line also sued Murillo separately on

the Notes and the Guaranty (the "Mark Line Indiana Lawsuit").[9]

32.    F&D and Mark Line have reached a settlement of the Mark Line Georgia

Lawsuit as to F&D (the "Mark Line Settlement").  As part of the Mark Line Settlement,

Mark Line assigned to F&D all its rights against Defendants Salvador V. Murillo and

Nick L. Mackie in connection with or incident to the Project, including, but not limited to,

its rights under the $743,397.50 Note and the Guaranty.   Under the Guaranty,

Defendant Salvador V. Murillo had personally agreed to pay over to Mark Line the

"[p]roceeds from a profit distribution due [Murillo] from Atlantic Marine Construction

under a certain Teaming Agreement between the parties...."[10]  Thus, by the Mark Line

Settlement, F&D has been assigned Mark Line's secured interest in the profit

distribution proceeds that have been or may be paid to Murillo under the Teaming

Agreement and the AMC Contracts.  In addition, in the Note Defendants Salvador V.

Murillo and Nick L. Mackie waived their personal interest in any proceeds from the AMC

Contracts until Mark Line is paid, effectively subordinating themselves to the rights of

Mark Line, in whose shoes F&D now stands.

---

[7] A copy of the Guaranty is attached hereto as Exhibit E, and is incorporated herein by reference for all purposes.
[8] *United States of America, for the Use and Benefit of Mark Line Industries, Inc. v. Murillo Modular Group, Ltd., and Fidelity and Deposit Company of Maryland*, Civil Action No. 4:10-cv-00044 (CDL), United States District Court, for the Middle District of Georgia, Columbus Division.
[9] *Mark Line Industries, Inc., Mark Line Industries, Inc. of Pennsylvania, Inc., and Mark Line Industries of North Carolina, LLC v. Murillo Modular Group, Ltd., Salvador V. Murillo, and Nick L. Mackie*, Civil Action No. 3:10-cv-00189-JTM-CAN, United States District Court for the Northern District of Indiana, South Bend Division.
[10] *See* the Guaranty, Ex. E.

**H.     Murillo's Imminent Receipt of Funds in Which F&D Has a Secured Interest and Equitable Ownership as a Trust Beneficiary**

33.     On information and belief, pursuant to the terms of the settlement of the AMC I Lawsuit and the AMC II Lawsuit, AMC has already or will soon pay Murillo several million dollars (the "AMC Settlement Payment"). There is a direct connection between the AMC Settlement Payment and F&D's claims for collateral and equitable relief sought hereby because under the Agreement of Indemnity F&D has a secured interest in "all sums…on account of…all other contracts whether bonded or not in which the Contractor has an interest," which would include the AMC Settlement Payment.[11] In addition, F&D has a secured interest in the AMC Settlement Payment because the AMC Settlement Payment constitutes proceeds on the AMC Contracts from AMC's and Murillo's Teaming Agreement, pledged to Mark Line by the Guaranty and then assigned to F&D by the Mark Line Settlement.[12]

34.     Moreover, on information and belief, some subcontractors of Murillo's on the AMC Contracts were paid using proceeds from the Contract. Under the Agreement of Indemnity and common law, Contract proceeds are trust funds as to which F&D is the equitable owner. Thus, F&D also has an equitable interest in part of the AMC Settlement Payment as a trust beneficiary.

35.     Furthermore, on information and belief, Defendant NMSM has or is about to receive funds from the sale or continued rental of a business property located in Texas, which is believed to be NMSM's only asset.

---

[11] *Cf.* Travelers Cas. & Sur. Co. v. Beck Dev.Corp., 95 F. Supp. 2d 549 (E.D. Va. 2000) (surety denied preliminary injunction as to life insurance proceeds because it did not show a nexus between the relief sought and the specific assets in question).
[12] *See* the Guaranty, Ex. E.

36.     Furthermore, on information and belief, Salvador V. Murillo and Nick L. Mackie have received or will receive substantial tax refunds related to Murillo losses.

37.     On information and belief, except for the AMC Settlement Payment, trust funds, proceeds of the sale or lease of the NMSM properties, and/or the tax refunds, the Indemnitor Defendants are not financially able to fully indemnify F&D or satisfy any money judgment F&D might obtain against them.

### I.     Risk of Defendants' Misappropriation of F&D's Funds

38.     When Murillo or any of the Defendants come into possession of the AMC Settlement Payment or other funds in which F&D has an interest or equitable ownership under the Agreement of Indemnity, the Guaranty assigned to it by the Mark Line Settlement, or other law, such funds could easily be transferred, secreted, or otherwise dissipated by the Defendants beyond the reach of F&D in violation of F&D's rights in such funds and Defendants' fiduciary obligations as trustees of such funds under the Agreement of Indemnity and the law.  Defendants have every motivation to do so to attempt to place such funds beyond the reach of F&D and render the Defendants judgment proof as to F&D.

39.     Such transfer, secreting, or other wrongful dissipation by the Defendants is, in fact, likely because as much as $1.3 million in proceeds from the Contract was previously misappropriated by certain of the Defendants in violation of F&D's rights in such funds and in breach of Defendants' fiduciary obligations as trustees of such funds under the Agreement of Indemnity and common law.  Defendants' actions in this respect were also in violation of the federal False Claims Act.  This past misappropriation by the Defendants makes future misappropriations by them of funds

as to which F&D has an interest or equitable ownership, including of the AMC Settlement Payment, more likely.  In addition, the Defendants have otherwise failed to comply with their other obligations to F&D under the Agreement of Indemnity, including their obligations under the Books and Records provision thereof, by failing to disclose or secreting financial and other information regarding the Indemnitor Defendants from F&D, to which it is entitled.  Indeed, and tellingly, Defendant Murillo has gone so far as to formally object to F&D's requests under the Freedom of Information Act to obtain from the Corp of Engineers Murillo's pay applications under the Contract and other information to which F&D is rightfully entitled, all of which should simply be turned over to F&D by Murillo pursuant to the Agreement of Indemnity.

40.    Such misappropriation by Defendants of the AMC Settlement Payment and other funds as to which F&D has an interest or equitable ownership represents an imminent harm to F&D that would be irreparable and as to which it has no adequate legal remedy.

J.    **Conclusion**

41.    Based on the foregoing facts, and because of the Defendants' failure to abide by their obligations under the Agreement of Indemnity and other law, including their fiduciary obligations, F&D has been compelled to bring this lawsuit against the Defendants seeking the following legal and equitable relief.

**VI.**
**COUNT ONE**
**BREACH OF GENERAL AGREEMENT OF INDEMNITY**

42.    F&D incorporates and realleges the factual allegations in Paragraphs 2 to 41 above as if fully copied herein.

43.    F&D has demanded that the Indemnitor Defendants honor their obligations under the Agreement of Indemnity to, among other things, indemnify and hold F&D harmless from any and all loss, liability, damages and expenses. Despite such demand, the Indemnitor Defendants have failed and refused to honor their obligations under the Agreement of Indemnity.

44.    As a result of the Indemnitor Defendants' breach of the Agreement of Indemnity, F&D has sustained losses and expenses, including, but not limited to, payments on the Payment Bond, attorney's fees and expenses, and consulting fees, and will continue to sustain losses and expenses through the time of trial.

45.    Pursuant to the clear terms of the Agreement of Indemnity, F&D is entitled to judgment for indemnity and exoneration against the Indemnitor Defendants for F&D's losses and expenses incurred as a result of issuing the Bonds to the Indemnitor Defendants and pursuing its right of indemnification.

46.    Furthermore, under the Agreement of Indemnity F&D is entitled to be placed in funds in an amount F&D deems necessary to protect it from further losses and expenses, and is granted other remedies, legal and equitable, including, but not limited to, those sought hereby.

## VII.
## COUNT TWO
### BREACH OF FIDUCIARY DUTIES AS TRUSTEE

47.    F&D incorporates and realleges the factual allegations in Paragraphs 2 to 46 above as if fully copied herein.

48.    The Trust Fund provision of the Agreement of Indemnity imposes fiduciary duties on the Indemnitor Defendants to hold in trust all funds so identified therein. The

Indemnitor Defendants agreed that any such funds would be held in trust for the benefit of F&D for the payment of all obligations arising as a result of the Project, including any liability or loss it might sustain under the Bonds.

49.     Upon information and belief, the Indemnitor Defendants, with knowledge of the trust character of the funds, did not hold in trust all funds identified as trust funds in the Agreement of Indemnity, but instead misappropriated such trust funds by defalcation while in their fiduciary capacities as trustees of the trust funds.  Moreover, on information and belief, Defendant Leonard Murillo, with knowledge of the trust character of the funds, either misappropriated such trust funds by defalcation while in his fiduciary capacity as a trustee of the trust funds, and/or conspired with, and/or aided and abetted the Indemnitor Defendants' in a breach of their fiduciary duty by the misappropriation of such trust funds.

50.     As a result of the Defendants' breach of their fiduciary duties to F&D, F&D has sustained losses and expenses, including, but not limited to, payments on the Payment Bond, attorney's fees, and consulting fees, and will continue to sustain losses and expenses through the time of trial.

## VIII.
## COUNT THREE
### COMMON LAW INDEMNIFICATION

51.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 50 above as if fully copied herein.

52.     By virtue of payments made by F&D in connection with the claims on the Payment Bond and the Project, the Defendants received valuable benefits equal to at least the amount of the payments made by F&D.

53.     As a result of such payments, the Defendants impliedly agreed to indemnify F&D for all such payments.

54.     F&D has made demand upon the Defendants to fulfill their indemnity obligations to F&D, but the Defendants have failed and refused to do so.  As a result of the Defendants' breach of their common law indemnity obligations, F&D has suffered a direct and proximate loss and is entitled to recover from the Defendants its losses and expenses (including, but not limited to, attorney's fees and consulting fees) incurred as a result of issuing the Bonds to the Defendants and pursuing its right of indemnification.

## IX.
## COUNT FOUR
### ATTORNEY'S FEES

55.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 54 above as if fully copied herein.

56.     F&D has made demand upon the Indemnitor Defendants that they indemnify and exonerate F&D pursuant to the Agreement of Indemnity, but the Indemnitor Defendants have failed and refused to do so.[13]  As a result of the refusal of the Indemnitor Defendants to indemnify and exonerate F&D as requested, F&D has been compelled to engage the law firm of Strasburger & Price, LLP to bring this action against the Indemnitor Defendants for the enforcement of the Agreement of Indemnity and other relief.  Pursuant to the terms of the Agreement of Indemnity, F&D is entitled to recover from the Indemnitor Defendants, in addition to the principal amount of recovery sought in this Complaint, attorneys' fees incurred, not only in the prosecution of this suit,

---

[13] *See* Demand Letter, Ex. D.

but in the investigation and response to the claims asserted against the Payment Bond issued by F&D in connection with the Project.

57.     In addition to its right to attorneys' fees under the Agreement of Indemnity, pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code F&D is entitled to reasonable attorneys' fees in addition to the amount of its damages suffered as a result of the Indemnitor Defendants' breach of contract.

**X.**
**COUNT FIVE**
**COSTS AND INTEREST**

58.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 57 above as if fully copied herein.

59.     Additionally, F&D is entitled to recover from Defendants, jointly and severally, all costs of court plus pre- and post-judgment interest at the maximum legal rate allowed by law.

**XI.**
**CONDITIONS PRECEDENT**

60.     All conditions precedent to F&D's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

**XII.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF**

61.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 60 above as if fully copied herein.

62.     Pursuant to Federal Rule of Civil Procedure 65, to preserve the status quo, F&D requests that the Court grant a temporary restraining order enjoining the

Defendants, jointly and severally, from dissipating any assets that are or may become available to them to satisfy their obligations to F&D and as to which F&D has an interest or equitable ownership, including, but not limited to, all AMC Settlement Payments; barring Defendants from continuing to hide, secret, and fail to disclose documents and other information to F&D; and, after hearing, issue a preliminary injunction enjoining Defendants from same pending trial.   F&D also requests that the Court order the specific enforcement of certain provisions of the Agreement of Indemnity and other equitable relief as set forth below.

### F&D IS ENTITLED TO A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF

63.    To obtain a temporary restraining order or preliminary injunction, or similar equitable relief, a plaintiff must show: (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury for which it has no remedy at law if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.[14]

### A.    There is a Substantial Likelihood F&D Will Prevail on the Merits

64.    F&D need only show a likelihood of prevailing on the merits of its claim, not a certainty.[15]   Yet F&D is certain to prevail on all its claims, including for breach of contract and breach of fiduciary duty.

---

[14] Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974); see also Cambridge Strategics, LLC v. Cook, No. 3:10-CV-2167-L, 2010 U.S. Dist. LEXIS 133702, *6-7 (N.D. Tex. Dec. 17, 2010) (including no adequate remedy of law requirement in element two).
[15] See Abdul Wali v. Coughlin, 754 F.2d 1015, 1024-1025 (2d Cir. 1985) (movant need only show that probability of success is better than 50 percent); Joseph J. Legat Architects P.C. v. United States Dev.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF
3328535.6/SP/33310/0639/022411

PAGE 22

65.     It is beyond dispute that Murillo failed to pay many of its subcontractors on the Contract as evidenced by the fact that over $1.3 million in claims have been made on the Payment Bond.   It is also beyond dispute that Murillo's failure to do so constituted a breach of the Contract and the Agreement of Indemnity.   It is also indisputable that the Indemnitor Defendants have failed to satisfy their obligations under the Agreement of Indemnity and other law, including, but not limited to, their obligation to provide F&D with sufficient collateral to protect it from loss, despite demand by F&D that they do so.[16]

66.     The right of a surety to strictly and summarily enforce indemnity agreements such as the Agreement of Indemnity and the rights arising thereunder are well settled in Texas.  A succinct but comprehensive overview of Texas law applicable to such indemnity agreements is found in *Old Republic Sur. Co. v. Clarence Palmer*,[17] which reads as follows, with internal citations included to demonstrate the settled character of the law:

> We construe indemnity agreements under the normal rules of contract construction.  *Associated Indem. Corp. v. CAT Contracting, Inc.* 964 S.W.2d 276, 284 (Tex. 1998).  If the contract is unambiguous, we will give legal effect to the contract as written.  *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W. 2d 951, 953 (Tex. 1983).
>
> When a surety is granted the contractual right to settle a claim without a judicial determination of liability, that right will be enforced as written, and the principal will be bound to reimburse the surety for the amount it has paid in settlement.  *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d at 282-85; *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 282 (Tex. App.—Dallas 1992, writ denied).  Common-law principles such

---

Corp., 625 F. Supp. 293, 301-302 (E.D. Ill. 1985) (plaintiff need not show certainty of winning because success on merits factor is "fluid").
[16]  *See* Demand Letter, Ex. D.
[17]  5 S.W.3d 357 (Tex. App.—Texarkana 1999, no pet. h.).

as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d at 285 (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e.). Where the surety is given the unqualified right to settle claims, it is immaterial whether the surety and its principal are legally liable on the bond. *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d at 282; *Ford v. Aetna Ins. Co.*, 394 S.W.2d at 698. Moreover, the surety does not owe a common-law duty of good faith and fair dealing to its principal. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415 (Tex. 1995). An unambiguous contractual right to indemnification on a settlement is absolute, unless the principal raises and proves an affirmative defense such as fraud. *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d at 282; *Ford v. Aetna Ins. Co.*, 394 S.W.2d at 698.

....

The Texas Supreme Court has said:

> There is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties sui juris may lawfully make such stipulations, and are bound by them.... The expense, delay, trouble, and risk of loss to the guarantee company is a sufficient safeguard against an unwarranted payment; and without such a stipulation as complained of here, guarantee companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.

*Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d at 284 (quoting *Fidelity & Cas. Co. of New York v. Harrison*, 274 S.W. 1002, 1004-05 (Tex. Civ. App.—Fort Worth 1925, writ ref'd).

67.     These principles were echoed at the United States District Court level in Texas.[18] Courts around the country also routinely enforce such indemnity agreements as a matter of law.[19] Thus, there is a substantial likelihood that F&D will prevail on the

---

[18] *Fid. & Deposit Co. v. Tri-Lam Co., Inc.*, No. SA-06-CA-207-XR, 2007 U.S. Dist. LEXIS 35439 (W.D. Tex. May 15, 2007).
[19] *See, e.g.*, Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp., 534 F. Supp. 2d 1290, 1303-04 (S.D. Fla. 2008) ("Sureties draft their indemnity agreements broadly, and with extensive protections, and

merits of its claims against the Indemnitor Defendants for indemnity under the Agreement of Indemnity and other law.[20]

68.    Furthermore, Murillo could only have gotten paid the Contract proceeds it received by certifying to the United States that its subcontractors had been paid and that Contract proceeds would be used to pay them, based on Federal Acquisition Regulation Subpart 52.232-5(c) and other law.  Yet it is beyond dispute that Murillo, in fact, failed to pay many of its subcontractors on the Contract as evidenced by the fact that over $1.3 million in claims have been made against F&D on the Payment Bond. Such funds were trust funds under the Agreement of Indemnity and other law as to which F&D was and is the equitable owner as trust beneficiary.  As such, it is highly likely that the Indemnitor Defendants will be found to have breached their fiduciary duties to F&D as a trust beneficiary, established by the Agreement of Indemnity and common law.   Further, Defendant Leonard Murillo also breached his own fiduciary duties to F&D and/or conspired with and/or aided and abetted the Indemnitor Defendants in their breach of fiduciary duties to F&D.  The Defendants' actions were in violation of the False Claims Act.  Therefore, there is a substantial likelihood that F&D will prevail against the Defendants on the merits of its claim for breach of fiduciary duty as well.

B.    **There is a Substantial Threat That F&D Will Suffer Imminent and Irreparable Injury as to Which It Has No Adequate Remedy at Law**

---

the courts, understanding the importance of the indemnity agreement, *consistently enforce the agreements and the remedies granted to the sureties.*") [emphasis added].
[20]   *See also* Devs. Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc., No. 09-21678, 2009 U.S. Dist. LEXIS 112955, *2-4 (S.D. Fla. Nov. 13, 2009) (finding likelihood of success on merits on similar facts).

69.     There is a substantial threat that the Defendants will fail to live up to their obligations to F&D under the Agreement of Indemnity and other law to F&D's imminent and irreparable injury.  Such injury is imminent because F&D has already incurred substantial losses as a result of the Defendants' actions, in the form of paid claims under the Payment Bond and in attorneys' fees and other expenses.  In addition, hundreds of thousands of dollars in claims on the Payment Bond are currently outstanding against F&D as a result of Defendants' actions, and F&D will certainly incur much more loss, including fees and expenses, associated with such claims.  Moreover, the Defendants have already failed to indemnify F&D despite demand, and have already failed to comply with other obligations to F&D under the Agreement of the Indemnity and the law, including, but not limited to, the duty to provide F&D with collateral, make available their books and records, and more, all to the present injury of F&D.

70.     In addition there is a substantial threat that Defendants will wrongfully transfer, hide, secret, or otherwise dissipate funds as to which F&D has an interest or equitable ownership under the Agreement of Indemnity and the law because the Defendants have engaged in similar actions before with respect to the Contract proceeds.  Such wrongful transfer or other dissipation by Defendants would be an imminent injury to F&D because Defendant Murillo has already or will soon to come into the possession of millions of dollars, including, but not limited to, of the AMC Settlement Payment, in which F&D has a secured interest and/or equitable ownership, and that could be used to satisfy the Defendants' obligations to F&D.  Moreover, the wrongful

FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED ORIGINAL COMPLAINT AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND OTHER EQUITABLE RELIEF
3328535.6/SP/33310/0639/022411

PAGE 26

transfer or other dissipation of such funds beyond the reach of F&D could occur in a moment and without any notice to F&D and before it could obtain any legal relief.

71.     The foregoing injuries to F&D would also be irreparable, and courts routinely reach that same conclusion for purposes of injunctive relief.[21]  The injury to F&D in this case is irreparable because much of F&D's losses, and the Defendants' failure to indemnify it for such losses, has already occurred.  Moreover, if funds that could be used to indemnify F&D, or as to which F&D has an interest or equitable ownership, are wrongfully transferred or otherwise dissipated by Defendants it would destroy any chance that F&D could ever recover such funds and leave the Defendants judgment proof and unable to indemnify F&D, rendering F&D's losses permanent.

72.     For the same reasons, F&D has no adequate remedy at law.  A plaintiff may demonstrate lack of an adequate remedy at law by showing that an award of damages would not be collectible because of the defendant's lack of financial resources.[22]  Indeed, under the law of suretyship generally, even if a surety's loss is monetary and only temporary, the very fact of its having to assume the primary obligor's obligation is a harm for which there is no adequate remedy at law.[23]  Except for the AMC Settlement Payment, the Indemnitor Defendants likely do not have sufficient

---

[21] *Devs. Sur. & Indem. Co.*, 2009 U.S. Dist. LEXIS 112955 at *4-5.
[22] Lakeview Tech., Inc. v. Robinson, 446 F.3d 655, 657 (7th Cir. 2006) (judgment awarding damages will not be adequate legal remedy if defendant is effectively judgment-proof); Aviara Parkway Farms, Inc. v. Agropecuaria La Finca, S.P.R. de R.L., No. NO. 08 CV 2301 JM (CAB), 2009 U.S. Dist. LEXIS 7173, *9 (S.D. Cal. Feb. 2, 2009); Fid. & Deposit Co. v. D.M. Ward Constr. Co., No. 06-2483-CM, 2008 U.S. Dist. LEXIS 53971, *12 (D. Kan. July 14, 2008).
[23] Travelers Cas. & Sur. Co. v. Ockerlund, No. 04 C 3963, 2004 U.S. Dist. LEXIS 15309, *7-8 (N.D. Ill. Aug. 5, 2004) [hereinafter *Ockerlund*] (*citing* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996)).

assets to fully indemnify F&D or pay any legal judgment F&D may obtain against them.

Thus, F&D has no adequate remedy at law.

**C.    The Threatened Harm to F&D Outweighs the Threatened Harm to the Defendants**

73.    If the temporary restraining order, preliminary injunction, and other equitable relief hereby sought by F&D are not granted, the threatened harm to F&D is that as a surety it would suffer a permanent loss by the actions of the Defendants, and further that the Defendants will wrongfully transfer or otherwise dissipate funds that could be used to indemnify F&D and as to which its has an interest or equitable ownership.

74.    This outweighs any threatened harm to the Defendants if such relief is granted because any funds of the Defendants made subject to the injunctive relief hereby sought by F&D could ultimately be returned to the Defendants if not used, whereas F&D would otherwise have to use its own funds to pay claims that were the Murillo's and the other Indemnitor Defendants' primary obligation.  This is precisely what the Agreement of Indemnity was designed to protect F&D against.[24]  Further, as stated below, F&D is willing to post a bond to further protect Defendants from potential harm if the injunctive relief sought hereby is issued.[25]

75.    On the other hand, the Defendants would be unjustly enriched and receive a windfall if the injunctive relief hereby sought is not granted in that they would retain the benefit of previously misappropriated funds, permanently escape their obligations to F&D, and have the opportunity to wrongfully transfer or otherwise misappropriate or

---

[24]  USF&G v. Feibus, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) ("[I]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced. Thus, in order to protect the surety's bargain, courts have granted specific performance to enforce collateral security provisions.") [internal quotations and citations omitted].
[25]  See Devs. Sur. & Indem. Co., 2009 U.S. Dist. LEXIS 112955 at *5 (noting injunction bond covered potential harm to injunction defendant on similar facts).

dissipate such funds in which F&D has a secured interest or equitable ownership to their improper benefit. Indeed, because the Defendants do not have a right at all to any funds in their possession as to which F&D has a superior legal right or equitable ownership, the Defendants would suffer no harm at all if an injunction were granted barring them from dissipating such funds or ordering them to pay such funds to F&D, as well as compelling other actions by them that they are already obligated to perform under the Agreement of Indemnity and other law.

### D. Granting the Preliminary Injunction Will Not Disserve the Public Interest

76.     Finally, the Court's issuance of the injunctive relief hereby sought would not disserve the public interest because the Defendants misappropriated as much as $1.3 million rightfully due to Murillo's subcontractors, and the issuance of the injunction hereby sought would deter such conduct by others and facilitate the return of such funds to their rightful owner, bolstering the public interest in contractors dealing honestly with the government and promptly paying those to whom they legitimately owe money.[26]

77.     On the contrary, the public interest would be disserved if the injunctive relief F&D seeks hereby were not granted because the Defendants would be financially rewarded from their misappropriation of the Contract proceeds and breach of fiduciary duty to F&D, as well their potential future misappropriation of funds as to which F&D has an interest or equitable ownership. Moreover, as its business, F&D issues payment, performance, and maintenance bonds on government construction projects, facilitating their efficient and cost-effective performance to the benefit of the public. Thus, the

---

[26] *See Ockerlund*, 2004 U.S. Dist. LEXIS 15309 at *19-20 (analyzing the benefit public interest served by granting preliminary injunction ordering the provision of collateral to a surety).

public interest would be harmed if the injunctive relief hereby sought by F&D were not granted because that would result in increased losses to F&D that will result in increased costs to contractors for the bonds F&D issues. These increased bond costs will be passed on by contractors to the government resulting in higher construction costs for the taxpaying public.[27]

### E.   Courts Routinely Grant Temporary Restraining Orders and Preliminary Injunctions in Similar Circumstances

78.   When faced with circumstances like those present here, courts around the country routinely grant sureties the relief now requested by F&D. Indeed, in *United States Fire & Casualty Co. v. Coggeshall Construction Co., Inc.*, the court went so far as to say that such relief should be granted as a matter of right:

> [A] court of equity will, at the request of a surety, seize funds due its principal and apply them to the principal's debts if the Surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the Surety will become liable.[28]

79.   In *Coggeshall*, the court granted a temporary restraining order directing the defendant principal on a payment bond to pay $500,000.00 to the payment bond surety as collateral, and granting the surety a lien on assets and real property of the indemnitors in the amount of $500,000.00.[29] The court found that forcing the surety to resort to a money judgment was not an adequate remedy and would irreparably harm the surety.[30]

---

[27] *See Devs. Sur. & Indem. Co.*, 2009 U.S. Dist. LEXIS 112955 at *5-6 (finding public interest in favor of continued solvency of surety companies for public benefit).
[28] No. 91-3159, 1991 U.S. Dist. LEXIS 21861, *5 (C.D. Ill. June 28, 1991) [hereinafter *Coggeshall*] (*quoting* Western Casualty & Surety Company v. Biggs, 217 F.2d 163 (7th Cir. 1954)).
[29] *Id.* at *1-10.
[30] *Id.* at *6-7.

80.    The Fifth Circuit has also held generally that when a principal is insolvent or has acted wrongfully, its surety is entitled to the type of equitable relief against the principal now sought by F&D against the Defendants, including the seizure and freezing of assets.[31] The court stated as follows:

> To have subrogation a surety must have discharged in full the obligation for which he is bound, and he then seeks to recover for himself the subject of the suit. In case of exoneration he proceeds before payment quia timet, and seeks to have payment made to the creditor. If the principal is solvent, the decree need not go further than to require the principal to pay, but, *when he is fraudulent, insolvent, or has absconded, the equity of exoneration needs and may have further protection. Injunctions, receivers, and equitable garnishments have been granted, property recovered from third parties, and funds traced and applied.*[32]

81.    In *Travelers Casualty & Surety Co. v. Ockerlund*, the court recognized that ordering the principal on a payment bond to post collateral with the surety was proper because such equitable relief is recognized under the law of suretyship, and further that the indemnity agreement rendered the surety "not simply an unsecured creditor," but created a specifically bargained for right to specific performance of the agreement's collateral security provision.[33]   The court noted that other courts had issued the same relief.[34]   Ultimately the Court in *Ockerlund* ordered the indemnitors to pay $500,000.00 to the surety within ten days.[35]

82.    Finally, in *Developers Surety & Indemnity Co. v. Electric Service & Repair, Inc.*, the court explicitly granted an injunction broadly barring the indemnitor defendants

---

[31]  Glades County v. Detroit Fid. & Sur. Co., 57 F.2d 449, 451-452 (5th Cir. Fla. 1932).
[32]  *Id.* [emphasis added].
[33]  2004 U.S. Dist. LEXIS 15309 at *7-8.
[34]  *Id.* at *10-11 (*citing* Travelers Cas. & Sur. Co. v. P. B. Verdico, Inc. et al., No. 03-C6985 (N.D. Ill. Nov. 26, 2003) (order granting preliminary injunction)).
[35]  *Id.* at *20.

from selling, transferring, encumbering, disposing of, or transferring any real property, personal property, or cash based on a similar indemnity agreement and similar facts.[36] Other courts recognize the propriety of preliminary injunction barring the principal's and indemnitors' dissipation of assets where the principal or indemnitors may be insolvent or are secreting such assets.[37]

83.    Thus, it is clear, that on these facts, courts routinely grant the relief sought by F&D, further demonstrating that F&D has met the requirements of a temporary restraining order and preliminary injunction, as well as demonstrating F&D's entitlement to the other equitable relief it hereby seeks.

**F.    Bond**

84.    F&D is willing to post a bond in an amount approved by the Court.

### REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BARRING DISSIPATION OF DEFENDANTS' ASSETS

85.    F&D incorporates and realleges the factual allegations in Paragraphs 2 to 84 above as is fully copied herein.

86.    Having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D asks that the Court issue a temporary restraining order barring the Defendants from dissipating any assets that could be used to satisfy their obligations to F&D and/or as to which F&D may have an interest or equitable ownership as a trust beneficiary, whether currently held by the

---

[36]  2009 U.S. Dist. LEXIS 112955 at *7-8.
[37]  *See, e.g.,* Travelers Cas. & Sur. Co. v. Grace & Naeem Uddin, Inc., No. 08-61868-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 36928, *2-5 (S.D. Fla. Apr. 15, 2009) ("[A]preliminary injunction is warranted to enforce a surety's rights if the principal is insolvent or secreting assets.") (*quoting Liberty Mut. Ins. Co.,* 534 F. Supp. 2d at 1322, *and citing Glades County,* 57 F.2d at 452).

Defendants or hereafter to be obtained by them, including, but not limited to, the AMC Settlement Payment or any proceeds obtained or which may be obtained from the sale or rental of Defendant NMSM's property; and after hearing, that the Court issue a preliminary injunction on the same terms pending trial of this lawsuit.

87.    F&D requests that the Court set its request for preliminary injunction for hearing at the earliest possible time.

### ORDER FOR SPECIFIC ENFORCEMENT OF BOOKS AND RECORDS PROVISION OF AGREEMENT OF INDEMNITY

88.    F&D incorporates and realleges the factual allegations in Paragraphs 2 to 87 above as if fully copied herein.

89.    Pursuant to Paragraph Ninth of the Agreement of Indemnity, the Indemnitor Defendants agreed as follows:

### BOOKS AND RECORDS

NINTH:      At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

90.    Without access to such information, F&D cannot fully adjust payment bond claims and cannot determine the amount of monies in bank accounts held by the Indemnitor Defendants, the assets owned by the Indemnitor Defendants that should have been pledged as collateral to secure the debts owed to F&D, or to otherwise determine F&D's rights under the Agreement of Indemnity and the Bonds.   Despite

demand by F&D, the Defendants have failed and refused to comply with the foregoing provision by hiding, secreting, or otherwise failing to disclose their books and records and other information covered by the foregoing provision. In fact, Defendant Murillo has gone so far as to formally object to a request by F&D under the Freedom of Information Act to the Corps of Engineers seeking Murillo's pay applications and other information under the Contract and relating to the Project despite F&D's clear right to such information. Under the circumstances, access to and a complete accounting of the books and records of the Indemnitor Defendants is necessary because F&D has no other adequate remedy at law. Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order for specific performance of the foregoing provision of the Agreement of Indemnity and commanding the Indemnitor Defendants to give F&D physical access to all books and records available under the Indemnity Agreement at the earliest practicable time.[38]

## ORDER FOR ACCOUNTING

91.    F&D incorporates and realleges the factual allegations in Paragraphs 2 to 90 above as is fully copied herein.

92.    As set forth above, Murillo was paid all the Contract proceeds, less approximately $124,000 that was paid directly to F&D as a result of claims on the Payment Bond. Yet over $1.3 million in claims have been made on the Payment Bond by Murillo's subcontractors under the Contract. Thus, it is likely that one or more of the

---

[38] *Devs. Sur. & Indem. Co.*, 2009 U.S. Dist. LEXIS 112955 at *8 (S.D. Fla. Nov. 13, 2009) (ordering specific performance of books and records provision of indemnity agreement).

Defendants defalcated or otherwise misappropriated the Contract proceeds. F&D has contractual, trust, and other rights in the Contract proceeds and was thus damaged by Defendants' defalcation. Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order commanding that the Defendants provide F&D with an accounting of the Contract proceeds and their disbursement.

### ORDER FOR SPECIFIC ENFORCEMENT OF COLLATERALIZATION PROVISION OF AGREEMENT OF INDEMNITY AND/OR ORDER FOR DEFENDANTS TO PROVIDE COLLATERAL TO F&D UNDER THE DOCTRINE OF *QUIA TIMET*

93.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 92 above as is fully copied herein.

94.     The Indemnitor Defendants have a contractual obligation, set forth in Paragraph Second of the Agreement of Indemnity, to place F&D in funds to protect F&D from loss. Courts routinely order the specific performance of such provisions in these circumstances,[39] and federal courts in Texas are no exception.[40] In addition, F&D has a common law right under the doctrine of *quia timet* to require the Indemnitor Defendants to post collateral to avoid loss to F&D and the depletion of the Indemnitor Defendants' assets, and to ensure faithful performance of the Indemnitor Defendants' obligations.[41]

---

[39] *E.g.*, *Ockerlund*, 2004 U.S. Dist. LEXIS 15309 at *7-8 (*citing* Safeco Ins. Co. v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984); Safeco Ins. Co. v. DeMatos Enters., No. 02-CV-2899, 2003 U.S. Dist. LEXIS 7651 (E.D. Pa. Apr. 10, 2003)).
[40] *E.g.*, Hartford Fire Ins. Co. v. 4-H Ventures, Inc., No. H-07-4355, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008).
[41] *E.g.*, *Ockerlund*, 2004 U.S. Dist. LEXIS 15309 at *15.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF

3328535.6/SP/33310/0639/022411                                                      PAGE 36

95.     F&D has made demand on the Indemnitor Defendants to post collateral in the amount of $1,035,001.00 to guarantee the faithful performance of their obligations.[42] Despite such demand, the Indemnitor Defendants have failed and refused to post collateral with F&D.  Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order commanding the specific performance of the collateralization requirement set forth in Paragraph Second of the Agreement of Indemnity, and enforcing the Indemnitor Defendants' duties at law and in equity, including under the doctrine of *quia timet*, by requiring the Indemnitor Defendants to post sufficient collateral in the amount of $1,035,001.00 pending the outcome of this action to protect F&D from loss and avoid depletion of the Indemnitor Defendants' assets, and to ensure faithful performance of the Indemnitor Defendants' obligations at law and under the Agreement of Indemnity.

### EXONERATION

96.     F&D incorporates and realleges the factual allegations in Paragraphs 2 to 95 above as if fully copied herein.

97.     Pursuant to the terms of the Agreement of Indemnity and the doctrine of equitable exoneration, F&D is entitled to be exonerated by the Indemnitor Defendants from all loss, liability, damage and expense threatened or incurred as a result of issuance of the Bonds.   Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above,

---

[42] *See* Demand Letter, Ex. D.

F&D requests that the Court issue an injunctive order commanding that the Defendants exonerate F&D from all loss, liability, damage and expense threatened or incurred as a result of issuance of the Bonds.

## SPECIFIC TERMS OF EQUITABLE RELIEF SOUGHT

98.    For the foregoing reasons, F&D requests that the Court grant a temporary restraining order, and, after hearing, a preliminary injunction enjoining and barring Defendants from the following actions:

(1)    spending, transferring, withdrawing, dissipating, selling, encumbering, utilizing, manipulating, or otherwise failing to preserve any property, including, but not limited to, monies, investments, or other funds held in cash or in any bank, financial, or other account

(a)    in the name of Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Individually, Kristi Mackie, Individually, Susan Murillo, Individually, Salvador V. Murillo, Individually, and Leonard Murillo, Individually;

(b)    into which funds due Murillo Modular Group, Ltd. under contract no. W912HN-07-D-0044-0004, dated September 30, 2008, between Murillo Modular Group, Ltd. and the United States Army Corps of Engineers, for the construction of a child development center at Fort Benning, Georgia, were deposited at any time in the past or currently are held;

(c)    into which funds due or paid to Murillo Modular Group, Ltd. as a result of the settlement of litigation between it and Atlantic Marine Construction Co., Inc. were deposited at any time in the past, or will be deposited, or are currently are held;

(d)    into which funds due NM & SM Development, Ltd. from the sale or rental of any real property were deposited at any time in the past, or will be deposited, or are currently are held; or

(e)    into which funds due Murillo Modular Group, Ltd., Nick L. Mackie, Individually, or Salvador V. Murillo, Individually, constituting federal tax refunds relating to Murillo Modular Group, Ltd. were deposited at any time in the past, or will be deposited, or are currently are held;

(2)     hiding, deleting, destroying, altering or overwriting any evidence in paper or electronic form that may in any way relate to the business of Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Individually, Kristi Mackie, Individually, Susan Murillo, Individually, Salvador V. Murillo, Individually, and Leonard Murillo, Individually, including but not limited to any data on any laptop computer, desktop computer, external storage media, or handheld device in Defendants' possession, custody, or control, wherever located;

as well as ordering that:

(3)     Defendants Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Individually, Kristi Mackie, Individually, Susan Murillo, Individually, and Salvador V. Murillo, Individually shall within five (5) days of the issuance of an order granting this request provide F&D with reasonable access to the books, records, and accounts of Defendants Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Individually, Kristi Mackie, Individually, Susan Murillo, Individually, and Salvador V. Murillo, Individually; and that any bank depository, materialman, supply house, or other person, firm, or corporation when requested by F&D is hereby authorized to furnish F&D any information requested including, but not limited to, the status of the work under contracts being performed by Murillo Modular, Ltd., (including, but not limited to the Contract), the condition of the performance of such contracts and payments of accounts;

(4)     The Defendants provide F&D with an accounting of the Contract proceeds and their disbursement within ten (10) days of the issuance of an order granting this request; and

(5)     Defendants Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Individually, Kristi Mackie, Individually, Susan Murillo, Individually, and Salvador V. Murillo, Individually shall within ten (10) days of the issuance of an order granting this request pay to F&D the sum of $1,035,001.00, in cash or its equivalent as collateral due to F&D under the Agreement of indemnity and the doctrine of collateralization/quia timet.

WHEREFORE, Plaintiff F&D requests that Defendants be cited to appear and answer and that upon final hearing or trial, the Court enter judgment against Defendants, jointly and severally, and in favor of F&D for all losses and expenses, including, but not limited to, as to the Indemnitor Defendants, as defined above, for attorney's fees and consulting fees, incurred by F&D through the time of trial; enter judgment that F&D recover from the Defendants its costs, pre- and post-judgment interest at the maximum amount allowed by law; grant F&D a temporary restraining order, preliminary injunction, and other equitable relief against the Defendants on the terms requested herein and as set forth in the accompanying order; and award F&D such other and further relief at law or in equity to which it is justly entitled.

Respectfully submitted,

CHRISTOPHER R. WARD
State Bar No. 24008233
christopher.ward@strasburger.com
JUSTIN P. MELKUS
State Bar No. 24041469
justin.melkus@strasburger.com
MICHAEL D. FEILER
Texas Bar No. 24055475
michael.feiler@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:  (214) 651-4722
Telecopier:  (214) 659-4108

ATTORNEYS FOR FIDELITY & DEPOSIT
COMPANY OF MARYLAND

## VERIFICATION

STATE OF INDIANA          §
                                     §

COUNTY OF LAKE       §       §

BEFORE ME, the undersigned authority, on this day personally appeared Darrell Leonard, a person known to me, who, upon his oath, deposed and stated that he is over the age of 21 years, is competent to make this affidavit, that he is Senior Claims Counsel of Fidelity & Deposit Company of Maryland, that he is fully authorized by Fidelity & Deposit Company of Maryland to make this affidavit, and that he has read the foregoing Original Complaint and Application for Temporary Restraining Order and Other Injunctive Relief by Fidelity & Deposit Company of Maryland, and the facts stated within it are within the personal knowledge of Fidelity & Deposit Company of Maryland and are true and correct.

FIDELITY & DEPOSIT COMPANY OF
MARYLAND

by: _____

Darrell Leonard, its Senior Claims Counsel and
Authorized Representative

Subscribed and sworn to, before me, by the said Darrell Leonard, in the capacities stated, on this the _34_ day of February 2011, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF INDIANA

My Commission Expires On:

_March 18, 2017_

PAMELA D. PAROBEK
Lake County
My Commission Expires
March 18, 2017

---

FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED ORIGINAL COMPLAINT AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND OTHER EQUITABLE RELIEF
3328535.6/SP/33310/0639/022111



# ORDER FOR SUPPLIES OR SERVICES

| | | | | PAGE 1 OF 15 |
|---|---|---|---|---|
| 1 CONTRACT/PURCH ORDER/ AGREEMENT NO W912HN-07-D-0044 | 2 DELIVERY ORDER/CALL NO 0004 | 3 DATE OF ORDER/CALL (YYYYMMMDD) 2008 Sep 30 | 4 REQ/PURCH REQUEST NO | 5 PRIORITY |

| 6 ISSUED BY | CODE W912HN | 7 ADMINISTERED BY (if other than 6) | CODE | 8 DELIVERY FOB |
|---|---|---|---|---|
| US ARMY ENGINEER DISTRICT SAVANNAH 100 W OGLETHORPE AVENUE SAVANNAH GA 31401-3640 | | SEE ITEM 6 | | [X] DESTINATION [ ] OTHER (See Schedule if other) |

| 9. CONTRACTOR | CODE 3HT95 | | FACILITY 3HT95 | 10 DELIVER TO FOB POINT BY (Date) SEE SCHEDULE | 11 MARK IF BUSINESS IS [ ] SMALL |
|---|---|---|---|---|---|
| NAME AND ADDRESS | MURILLO MODULAR GROUP, LTD 1400 BRADLEY LN CARROLLTON TX 75007-4855 | | | 12 DISCOUNT TERMS | [ ] SMALL DISADVANTAGED [ ] WOMEN-OWNED |
| | | | | 13 MAIL INVOICES TO THE ADDRESS IN BLOCK See Item 15 | |

| 14 SHIP TO | CODE | 15. PAYMENT WILL BE MADE BY | CODE F&A HQ | |
|---|---|---|---|---|
| SEE SCHEDULE | | US ARMY CORPS OF ENGRS FINANCE CENTER USAED(HQUSACE) 5722 INTEGRITY DRIVE MILLINGTON TN 38054-5005 | | MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2. |

| 16. TYPE OF ORDER | DELIVERY/ CALL [X] | This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract |
|---|---|---|
| | PURCHASE | Reference your quote dated Furnish the following on terms specified herein  REF: |

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

| NAME OF CONTRACTOR | SIGNATURE | TYPED NAME AND TITLE | DATE SIGNED (YYYYMMMDD) |
|---|---|---|---|
| [ ] If this box is marked, supplier must sign Acceptance and return the following number of copies: | | | |

17 ACCOUNTING AND APPROPRIATION DATA/LOCAL USE

See Schedule

| 18 ITEM NO. | 19. SCHEDULE OF SUPPLIES/ SERVICES | 20. QUANTITY ORDERED/ ACCEPTED* | 21 UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | SEE SCHEDULE | | | | |

| * If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle. | 24. UNITED STATES OF AMERICA TEL: 912-652-5072 EMAIL: terrence.d.johnson@usace.army.mil BY: TERRENCE D JOHNSON         CONTRACTING / ORDERING OFFICER | 25. TOTAL $3,800,987.52 26. DIFFERENCES |
|---|---|---|

| 27a. QUANTITY IN COLUMN 20 HAS BEEN |
|---|
| [ ] INSPECTED  [ ] RECEIVED  [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED |

| b SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | c. DATE (YYYYMMMDD) | d PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE |
|---|---|---|

| e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 28. SHIP NO. | 29. DO VOUCHER NO. | 30. INITIALS |
|---|---|---|---|
| | [ ] PARTIAL [ ] FINAL | 32 PAID BY | 33 AMOUNT VERIFIED CORRECT FOR |
| f. TELEPHONE NUMBER | g. E-MAIL ADDRESS | | |
| 36. I certify this account is correct and proper for payment. | 31 PAYMENT | | 34. CHECK NUMBER |
| a. DATE (YYYYMMMDD) | b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | [ ] COMPLETE [ ] PARTIAL [ ] FINAL | |
| | | | 35. BILL OF LADING NO. |

| 37. RECEIVED AT | 38. RECEIVED BY | 39 DATE RECEIVED (YYYYMMMDD) | 40 TOTAL CONTAINERS | 41 S/R ACCOUNT NO | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|

DD Form 1155, DEC 2001                    PREVIOUS EDITION IS OBSOLETE.

EXHIBIT A



9136636182          6 Fast Fax                    Zurich              03 40 50 p m    12-10-2008          1 /7



## ZURICH

### Agreement of Indemnity

THIS AGREEMENT of Indemnity, made and entered into this 30th day of June, 2008 by Murillo Modular Group, Ltd., 1400 Bradley Lane, Carrollton, TX 75007, (hereinafter called the Contractor) and NM & SM Development, Ltd., 1400 Bradley Lane, Carrollton, TX 75007, Lonestrella, LLC, 1400 Bradley Lane, Carrollton, TX 75007, Allo Construction & Engineering, LLC dba Ace Mechanical, 1400 Bradley Lane, Carrollton, TX 75007, Salvador Murillo & Susan Murillo, 4105 Equestrian Court, Flower Mound, TX 75028, Nick L. Mackie & Kristi Mackie, 4704 Pacer Way, Flower Mound, TX 75028 (hereinafter called the Indemnitors, if any) and ZURICH AMERICAN INSURANCE COMPANY and its Subsidiaries and Affiliates including, but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, its successors and assigns (hereinafter called Surety).

### WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or in joint venture with others, may desire or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute from time to time the same or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from cancelling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

Now, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators successors and assigns, jointly and severally, hereby covenant and agree with the Surety, as follows:

### PREMIUMS

FIRST:  The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

### INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety.  In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

### ASSIGNMENT

THIRD:  The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter, incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the

C345 02-03 Edition

### EXHIBIT B

provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plants, tools, drawings, plans, designs, architectural works, documents, specifications, models and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for, held, intended for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest; (f) A license to use, without cost to the Surety, any interest the Contractor may have in and to all copyrights, inventions, applications, patents, or any other form of intellectual property, and any improvements thereon, which now, or may hereafter, relate to any and all of the contracts referred to in the Bonds or elsewhere, or which are now, or may hereafter be, embodied in any drawings, plans, designs, architectural works, documents, specifications, models, machinery, equipment, plants, processes or other materials referred to in section (b) of this paragraph.

## TRUST FUND

**FOURTH:** If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## UNIFORM COMMERCIAL CODE

**FIFTH:** That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

## TAKEOVER

**SIXTH:** In the event of any breach or default asserted by the obligee in any said Bonds, or the Contractor has abandoned the work on or forfeited any contract or contracts covered by any said Bonds, or has failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

## CHANGES

**SEVENTH:** The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and/or to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or

C345 02-03 Edition

substitutes therefor, with the same or different conditions, provisions and obliges and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

## ADVANCES

EIGHTH:  The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## BOOKS AND RECORDS

NINTH:  At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

## DECLINE EXECUTION

TENTH:  Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

ELEVENTH:  The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

TWELFTH:  The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

THIRTEENTH:  The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## SURETIES

FOURTEENTH:  In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

FIFTEENTH:  Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits, upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

SIXTEENTH:  That the Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

C345 02-03 Edition

9136636182          6 Fast Fax                        Zurich                      03 43 35 p m       12-10-2009          4 /7

## INVALIDITY

**SEVENTEENTH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

**EIGHTEENTH:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors, hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

**NINETEENTH:** This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at 3910 Keswick Road, P.O. Box 1227, Baltimore, Maryland 21203, Attention: Vice President, Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors, as to the Bonds that may have been theretofore executed.

## BONDS FOR RELATED ENTITIES

**TWENTIETH:** The Contractor and Indemnitors hereby agree that their obligation under this Agreement shall apply to any Bonds the Surety executes on behalf of any present or future, directly or indirectly owned subsidiaries or affiliates, and any other legal entities in which the Contractor has an ownership interest including, but not limited to, any corporations, partnerships, limited liability companies (LLC) and joint ventures, whether acting alone or in joint venture with others not named herein. In addition, the Contractors and Indemnitors agree that their obligations under this Agreement shall apply to any Bonds the Surety issues on behalf of any entity upon the written request of **Murillo Modular Group, Ltd.**.

**TWENTY-FIRST:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

IN WITNESS WHEREOF, we have signed, and sealed the day and year first above written.

ATTEST OR WITNESS:

CONTRACTOR:
Murillo Modular Group, Ltd.
1400 Bradley Lane
Carrollton, TX 75007

Witness name & title

Salvador Murillo, General Partner                    [If Seal is needed, type (SEAL) here.]

INDEMNITORS:

NM & SM Development, Ltd.
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, General Partner        [If Seal is needed, type (SEAL) here.]

Lonestrella, LLC
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, Member        [If Seal is needed, type (SEAL) here.]

Allo Construction & Engineering, LLC dba Ace Mechanical
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, Member        [If Seal is needed, type (SEAL) here.]

MARK C. MACKIE
COUNSEL
_____
Witness name & title

Salvador Murillo
4105 Equestrian Court
Flower Mound, TX 75028

_____,  [If Seal is needed, type (SEAL) here.]
Salvador Murillo, Individually

Susan Murillo
4105 Equestrian Court
Flower Mound, TX 75028

_____
Witness name & title

Susan Murillo        [If Seal is needed, type (SEAL) here.]

Nick L. Mackie
4704 Pacer Way
Flower Mound, TX 75028

_____
Witness name & title

[If Seal is needed, type (SEAL) here.]

C345 02-03 Edition

Kristi Mackie
4704 Pacer Way
Flower Mound, TX 75028

_Witness name & title_

Kristi Mackie                [If Seal is needed, type (SEAL) here.]

### ZURICH AMERICAN INSURANCE COMPANY

_____    By  _____ (SEAL)
_Assistant Secretary_                                                        _Vice-President_

#### For Acknowledgment of Contractor's Signature
### CORPORATE ACKNOWLEDGMENT

STATE OF _____ 
                                              } SS:
COUNTY OF _____

On this _____ day of _____ _____, _____, before me, the subscriber, personally
appeared _____ to me personally known, who, being duly sworn, did depose and say that he
              (Insert here name of officer who signs for the corporation)
resides in the city of _____, that he is the _____
of _____ the corporation described in, and which executed, the _____ President
within instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order; and the deponent
further said that he is acquainted with _____
                                                                    (Insert here name of officer who attests for the corporation)
and knows that he is the _____ Secretary of said corporation and that he subscribed his name to the
within instrument by a like order of the said Board of Directors.

My Commission Expires _____          _____
                                                                                      (Notary Public)

### PARTNERSHIP ACKNOWLEDGMENT

STATE OF    _Texas_
                                              } SS:
COUNTY OF    _Denton_

On this 30th day of June, 2008 before me, personally appeared Salvador Murillo, a member of the co-partnership of  Murillo
Modular Group, Ltd. to me known and known to me to be the person who is described in and who executed the foregoing instrument,
and acknowledged to me that he executed the same as and for the act and deed of the said co-partnership.

My Commission Expires _____ _10. 29. 2011_ _____          Cindy A. Snitchler
                                                                                      (Notary Public)

```
CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011
```

C345 02-03 Edition

9136636182          6 East Fax                          Zurich                    03 45 00 p m    12-10-2009        7/7

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _Texas_

COUNTY OF _Denton_ } SS:

On this _30th_ day of _June, 2008_ before me, personally appeared _Nick L. Mackie_, a member of the co-partnership of _NM & SM Development, Ltd._ to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledged to me that he executed the same as and for the act and deed of the said co-partnership.

My Commission Expires _10, 29, 2011_                          _Cindy A Snitchler_
                                                                (Notary Public)

**For Acknowledgment by Limited Liability Company**

STATE OF _Texas_

COUNTY OF _Denton_ } SS:

```
CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011
```

On this _30th_ day of _June, 2008_, before me, personally appeared _Nick L. Mackie_, Member of the limited liability company of _Lonestrella, LLC_ to me known and known to me to be the persons who are described in and who executed the foregoing instrument, and acknowledged to me that they executed the same as and for the act and deed of the said limited liability company.

My Commission Expires _10-29-2011_                          _Cindy A Snitchler_
                                                            (Notary Public)

```
CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011
```

**For Acknowledgment by Limited Liability Company**

STATE OF _Texas_

COUNTY OF _Denton_ } SS:

On this _30th_ day of _June, 2008_, before me, personally appeared _Nick L. Mackie_, Member of the limited liability company of _Allo Construction & Engineering, LLC dba Ace Mechanical_ to me known and known to me to be the persons who are described in and who executed the foregoing instrument, and acknowledged to me that they executed the same as and for the act and deed of the said limited liability company.

My Commission Expires _10-29-2011_                          _Cindy A Snitchler_
                                                            (Notary Public)

```
CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011
```

**For Acknowledgment of Indemnitor's Signatures**

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Texas_

COUNTY OF _Denton_ } SS:

On this _30th_ day of _June, 2008_ before me, the subscriber, personally appeared _Salvador & Susan Murillo and Nick L. & Kristi Mackie_ to me personally known, and known by me to be the persons described in, and who executed, the foregoing instrument and acknowledged same to be _____ act and deed.

My Commission Expires _10-29-2011_                          _Cindy A Snitchler_
                                                            (Notary Public)

```
CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011
```

C345 02-03 Edition

8943839

| PERFORMANCE BOND<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>September 30, 2008 | OMB No.:9000-0045<br>Expires: 09/30/98 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*

Murillo Modular Group, LTD
1400 Bradley Lane
Carrollton, TX 75007

TYPE OF ORGANIZATION *("X" one)*

☐ INDIVIDUAL   ☐ PARTNERSHIP

☐ JOINT VENTURE   ☒ CORPORATION

STATE OF INCORPORATION

Texas

SURETY(IES) *(Name(s) and business address(es))*

Fidelity and Deposit Company of Maryland
1400 American Lane, Tower 1
19th Floor
Schaumburg, IL 60196-1056

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 699 | 987 | 82 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 9/30/2008 | W912HN-07-D-0044-0004 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

PRINCIPAL

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | BY:            (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | 3. | |

INDIVIDUAL SURETY(IES)

| | 1. | 2. | |
|---|---|---|---|
| SIGNATURE(S) | (Seal) | | (Seal) |
| NAME(S) *(Typed)* | 1. | 2. | |

CORPORATE SURETY(IES)

| SURETY A | NAME & ADDRESS | Fidelity and Deposit Company of Maryland, Schaumburg, IL 60196-1056 | STATE OF INC.<br>Md | LIABILITY LIMIT<br>$17,619,000.00 | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. BY: | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. James T. Smith<br>Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96 )
Prescribed by GSA-FAR (48 CFR) 53.228(b)

EXHIBIT C

8943839

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>September 30, 2008 | FORM APPROVED OMB NO.<br>9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503

**PRINCIPAL** (Legal name and business address)

Murillo Modular Group, LTD
1400 Bradley Lane
Carrolton, TX 75007

**TYPE OF ORGANIZATION** ("X" one)

☐ INDIVIDUAL     ☐ PARTNERSHIP

☐ JOINT VENTURE     ☒ CORPORATION

**STATE OF INCORPORATION**
Texas

**SURETY(IES)** (Name(s) and business address(es))

Fidelity and Deposit Company of Maryland
1400 American Lane, Tower 1
19th Floor
Schaumburg, IL 60196-1056

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 699 | 987 | 82 |

| CONTRACT DATE | CONTRACT NO |
|---|---|
| 9/30/2008 | W912HN-07-D-0044-0004 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>BY:          (Seal) | 2.<br>(Seal) | 3<br>(Seal) | Corporate |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3 | Seal |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | |
| NAME(S) (Typed) | 1 | 2. | |

| CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|
| **SURETY A** | NAME & ADDRESS | Fidelity and Deposit Company of Maryland, Schaumburg, IL 60196-1056 | STATE OF INC.<br>Md | LIABILITY LIMIT<br>$ 17,619,000.00 |
| | SIGNATURE(S) | 1.<br>BY: | 2. | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1.  James T. Smith<br>      Attorney-in-Fact | 2. | Seal |

NSN 7540-01-152-8061
Previous edition not usable
F.9769C (10/98)

25-205

STANDARD FORM 25-A
Prescribed by GSA — FAR (48 CFR) 53.228(c)





## Strasburger
### ATTORNEYS AT LAW

March 23, 2010

CHRISTOPHER R. WARD
214.651.4722
Direct Fax: 214.659.4108
christopher.ward@strasburger.com

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7066

Murillo Modular Group, Ltd.
Attn: Salvador Murillo, General Partner
1400 Bradley Lane
Carrollton, TX 75007

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7080

Lonestrella, LLC
Attn: Nick L. Mackie, Member
1400 Bradley Lane
Carrollton, TX 75007

VIA EMAIL AND CERTIFIED MAIL RETURN RECEIPT
REQUESTED No. 7107 6719 6320 0064 7103

Nick L. Mackie
4704 Pacer Way
Flower Mound, TX 75028

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7127

Susan Murillo
4105 Equestrian Court
Flower Mound, TX 75028

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7073

NM & SM Development, Ltd.
Attn: Nick L. Mackie, General Partner
1400 Bradley Lane
Carrollton, TX 75007

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7097

Allo Construction & Engineering, LLC
d/b/a Ace Mechanical
Attn: Nick L. Mackie, Member
1400 Bradley Lane
Carrollton, TX 75007

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
No. 7107 6719 6320 0064 7110

Kristi Mackie
4704 Pacer Way
Flower Mound, TX 75028

VIA EMAIL AND CERTIFIED MAIL RETURN RECEIPT
REQUESTED No. 7107 6719 6320 0064 7134

Salvador Murillo
4105 Equestrian Court
Flower Mound, TX 75028

Re:  Surety:      Fidelity and Deposit Company of Maryland
     Principal:   Murillo Modular Group, Inc.
     Bond No.:    PRF 8943839
     Project:     Contract No. W912HN-07-D-0044-0004, Fort Benning, GA

3027129.1/SP/33310/0639/032310

**Strasburger & Price, LLP**

901 Main Street, Suite 4400 • Dallas, Texas 75202-3794 • 214.651.4300 tel • 214.651.4330 fax • www.strasburger.com

Austin • Collin County • Dallas • Houston • San Antonio • New York • Washington D.C.

Strasburger & Price, SC - Mexico City

EXHIBIT D



March 23, 2010
Page 2

Ladies and Gentlemen:

We represent Fidelity and Deposit Company of Maryland ("F&D"). As you know, F&D issued Payment and Performance Bonds (the "Bonds") in connection with the above-referenced Project naming Murillo Modular Group, Inc. ("Murillo"), as principal. On or about June 30, 2008, an Agreement of Indemnity was executed by Murillo Modular Group, Ltd., NM & SM Development, Ltd., Lonestrella, LLC, Allo Construction & Engineering, LLC d/b/a Ace Mechanical, Nick L. Mackie, Kristi Mackie, Susan Murillo and Salvador Murillo in favor of F&D as inducement and consideration for the issuance by F&D of the Bonds. I am enclosing a copy of the Agreement of Indemnity for ease of reference. Such Agreement provides in relevant part:

### INDEMNITY

SECOND:  The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid clauses shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

As you know, F&D has received a claim on the payment bond issued on behalf of Murillo. F&D has established reserves in the amount of $1,035,001.00 as a result of the claim it has received.  Your failure to make payment to unpaid subcontractors and suppliers despite notice of same and to otherwise exonerate F&D constitutes a default under the attached Agreement of Indemnity.



March 23, 2010
Page 3

Demand is hereby made that you deposit funds with F&D within ten (10) days from the date hereof in the amount of $1,035,0001.00, which is equal to the amount of reserve presently set by F&D, to protect F&D from loss.  If I have not received the demanded funds within ten (10) days from the date of this letter, I have been instructed to file suit against each of you pursuant to the Agreement of Indemnity.

F&D reserves all of its rights under the Agreement of Indemnity and/or at common law. Nothing herein shall be deemed to be an estoppel, waiver, or modification of any of F&D's rights, and F&D reserves all of its rights at law and in equity.

Yours very truly,

Christopher R. Ward
CRW/kmg
Enclosure
cc:    Darrell Leonard



# ZURICH

## Agreement of Indemnity

THIS AGREEMENT of Indemnity, made and entered into this **30th** day of **June, 2008** by Murillo Modular Group, Ltd., **1400 Bradley Lane, Carrollton, TX 75007**, (hereinafter called the Contractor) and NM & SM Development, Ltd., **1400 Bradley Lane, Carrollton, TX 75007**, Lonestrella, LLC, **1400 Bradley Lane, Carrollton, TX 75007**, Allo Construction & Engineering, LLC dba Ace Mechanical, **1400 Bradley Lane, Carrollton, TX 75028**, Salvador Murillo & Susan Murillo, **4105 Equestrian Court, Flower Mound, TX 75028**, Nick L. Mackie & Kristi Mackie, **4704 Pacer Way, Flower Mound, TX 75028** (hereinafter called the Indemnitors, if any) and ZURICH AMERICAN INSURANCE COMPANY and its Subsidiaries and Affiliates including, but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, its successors and assigns (hereinafter called Surety),

### WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or in joint venture with others, may desire or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute from time to time the same or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from cancelling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

Now, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators successors and assigns, jointly and severally, hereby covenant and agree with the Surety, as follows:

### PREMIUMS

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

### INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

### ASSIGNMENT

THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter, incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the

9136636182        6 East Fax                    Zurich                03:41:40 p.m.    12-10-2009           2/7

provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plants, tools, drawings, plans, designs, architectural works, documents, specifications, models and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for, held, intended for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest; (f) A license to use, without cost to the Surety, any interest the Contractor may have in and to all copyrights, inventions, applications, patents, or any other form of intellectual property, and any improvements thereon, which now, or may hereafter, relate to any and all of the contracts referred to in the Bonds or elsewhere, or which are now, or may hereafter be, embodied in any drawings, plans, designs, architectural works, documents, specifications, models, machinery, equipment, plants, processes or other materials referred to in section (b) of this paragraph.

### TRUST FUND

FOURTH: If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

### UNIFORM COMMERCIAL CODE

FIFTH: That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

### TAKEOVER

SIXTH: In the event of any breach or default asserted by the obligee in any said Bonds, or the Contractor has abandoned the work on or forfeited any contract or contracts covered by any said Bonds, or has failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

### CHANGES

SEVENTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or

9136636182        6 East Fax                  Zurich                  03 42 42 p m    12-10-2009          3 /7

substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

## ADVANCES

EIGHTH: The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## BOOKS AND RECORDS

NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

## DECLINE EXECUTION

TENTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

ELEVENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

TWELFTH: The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## SURETIES

FOURTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

FIFTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits, upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

SIXTEENTH: That the Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

C345 02-03 Edition

## INVALIDITY

SEVENTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

EIGHTEENTH: The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors, hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

NINETEENTH: This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at 3910 Keswick Road, P.O. Box 1227, Baltimore, Maryland 21203, Attention: Vice President, Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors, as to the Bonds that may have been theretofore executed.

## BONDS FOR RELATED ENTITIES

TWENTIETH:   The Contractor and Indemnitors hereby agree that their obligation under this Agreement shall apply to any Bonds the Surety executes on behalf of any present or future, directly or indirectly owned subsidiaries or affiliates, and any other legal entities in which the Contractor has an ownership interest including, but not limited to, any corporations, partnerships, limited liability companies (LLC) and joint ventures, whether acting alone or in joint venture with others not named herein. In addition, the Contractors and Indemnitors agree that their obligations under this Agreement shall apply to any Bonds the Surety issues on behalf of any entity upon the written request of **Murillo Modular Group, Ltd.**.

TWENTY-FIRST: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

IN WITNESS WHEREOF, we have signed, and sealed the day and year first above written.

ATTEST OR WITNESS:                          CONTRACTOR:
                                            Murillo Modular Group, Ltd.,
                                            1400 Bradley Lane
                                            Carrollton, TX 75007

_____                 _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                         Salvador Murillo, General Partner


_____

INDEMNITORS:

NM & SM Development, Ltd.
1400 Bradley Lane
Carrollton, TX 75007

_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                    Nick L. Mackie, General Partner

Lonestrella, LLC
1400 Bradley Lane
Carrollton, TX 75007

_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                    Nick L. Mackie, Member

Allo Construction & Engineering, LLC dba Ace Mechanical
1400 Bradley Lane
Carrollton, TX 75007

_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                    Nick L. Mackie, Member

                                        Salvador Murillo
                                        4105 Equestrian Court
                                        Flower Mound, TX 75028
MARK C. MACKIE
COUNSEL
_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                    Salvador Murillo, Individually

                                        Susan Murillo
                                        4105 Equestrian Court
                                        Flower Mound, TX 75028

_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title                    Susan Murillo

                                        Nick L. Mackie
                                        4704 Pacer Way
                                        Flower Mound, TX 75028

_____              _____ [If Seal is needed, type (SEAL) here.]
Witness name & title

INDEMNITORS:

NM & SM Development, Ltd.
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, General Partner        [If Seal is needed, type (SEAL) here.]

Lonestrella, LLC
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, Member        [If Seal is needed, type (SEAL) here.]

Allo Construction & Engineering, LLC dba Ace Mechanical
1400 Bradley Lane
Carrollton, TX 75007

_____
Witness name & title

Nick L. Mackie, Member        [If Seal is needed, type (SEAL) here.]

MARK C. MACKIE
COUNSEL
_____
Witness name & title

Salvador Murillo
4105 Equestrian Court
Flower Mound, TX 75028

Salvador Murillo, Individually        [If Seal is needed, type (SEAL) here.]

Susan Murillo
4105 Equestrian Court
Flower Mound, TX 75028

_____
Witness name & title

Susan Murillo        [If Seal is needed, type (SEAL) here.]

Nick L. Mackie
4704 Pacer Way
Flower Mound, TX 75028

_____
Witness name & title

[If Seal is needed, type (SEAL) here.]

C345 02-03 Edition

Kristi Mackie
4704 Pacer Way
Flower Mound, TX 75028

_Witness name & title_                    _Kristi Mackie_    [If Seal is needed, type (SEAL) here.]

ZURICH AMERICAN INSURANCE COMPANY

                                         By _____ (SEAL)
_Assistant Secretary_                                                        _Vice-President_

### For Acknowledgment of Contractor's Signature
### CORPORATE ACKNOWLEDGMENT

STATE OF _____ }
                          } SS:
COUNTY OF _____ }

    On this _____ day of _____ _____, _____, before me, the subscriber, personally
appeared _____ to me personally known, who, being duly sworn, did depose and say that he
         (Insert here name of officer who signs for the corporation)
resides in the city of _____, that he is the _____ President
of _____ the corporation described in, and which executed, the
within instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order; and the deponent
further said that he is acquainted with _____
                                        (Insert here name of officer who attests for the corporation)
and knows that he is the _____ Secretary of said corporation and that he subscribed his name to the
within instrument by a like order of the said Board of Directors.

My Commission Expires _____

                                    _____
                                              (Notary Public)


### PARTNERSHIP ACKNOWLEDGMENT

STATE OF _TEXAS_ }
                 } SS:
COUNTY OF _DENTON_ }

    On this _30th_ day of _June, 2008_ before me, personally appeared _Salvador Murillo_, a member of the co-partnership of _Murillo
Modular Group, Ltd._ to me known and known to me to be the person who is described in and who executed the foregoing instrument,
and acknowledged to me that he executed the same as and for the act and deed of the said co-partnership.

My Commission Expires _10, 29, 2011_     _Cindy A. Snitcher_
                                              (Notary Public)



CINDY A. SNITCHLER
MY COMMISSION EXPIRES
October 29, 2011

9136636182          6 East Fax                    Zurich                03:45:00 p.m.   12-10-2009          7 /7

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _Texas_  }
COUNTY OF _Denton_ }  SS:

On this <u>30th</u> day of <u>June, 2008</u> before me, personally appeared <u>Nick L. Mackie</u>, a member of the co-partnership of <u>NM & SM Development, Ltd.</u> to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledged to me that he executed the same as and for the act and deed of the said co-partnership.

My Commission Expires _10.29.2011_                          _Cindy A. Snitchler_
                                                              (Notary Public)

### For Acknowledgment by Limited Liability Company

STATE OF _Texas_  }
COUNTY OF _Denton_ }  SS:

[Seal: CINDY A. SNITCHLER / MY COMMISSION EXPIRES / October 29, 2011]

On this <u>30th</u> day of <u>June, 2008</u>, before me, personally appeared <u>Nick L. Mackie</u>, Member of the limited liability company of <u>Lonestrella, LLC</u> to me known and known to me to be the persons who are described in and who executed the foregoing instrument, and acknowledged to me that they executed the same as and for the act and deed of the said limited liability company.

My Commission Expires _10-29-2011_                          _Cindy A. Snitchler_
                                                              (Notary Public)

[Seal: CINDY A. SNITCHLER / MY COMMISSION EXPIRES / October 29, 2011]

### or Acknowledgment by Limited Liability Company

STATE OF _Texas_  }
COUNTY OF _Denton_ }  SS:

On this <u>30th</u> day of <u>June, 2008</u>, before me, personally appeared <u>Nick L. Mackie</u>, Member of the limited liability company of <u>Allo Construction & Engineering, LLC dba Ace Mechanical</u> to me known and known to me to be the persons who are described in and who executed the foregoing instrument, and acknowledged to me that they executed the same as and for the act and deed of the said limited liability company.

My Commission Expires _10-29.2011_                          _Cindy A. Snitchler_
                                                              (Notary Public)

[Seal: CINDY A. SNITCHLER / MY COMMISSION EXPIRES / October 29, 2011]

### For Acknowledgment of Indemnitor's Signatures

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Texas_  }
COUNTY OF _Denton_ }  SS:

On this <u>30th</u> day of <u>June, 2008</u> before me, the subscriber, personally appeared <u>Salvador & Susan Murillo and Nick L. & Kristi Mackie</u> to me personally known, and known by me to be the persons described in, and who executed, the foregoing instrument and acknowledged same to be _____ act and deed.

My Commission Expires _10-29-2011_                          _Cindy A. Snitchler_
                                                              (Notary Public)

[Seal: CINDY A. SNITCHLER / MY COMMISSION EXPIRES / October 29, 2011]

C345  02-03 Edition                        Page 7 of 7



*Any $ for Nick?*

## Limited Personal Guaranty

The undersigned, the general partner of Murillo Modular Group, Ltd., Borrower (the "Guarantor"), hereby promises and guarantees to Mark Line Industries, Inc.("Lender") that the Borrower shall promptly and fully remit certain earmarked funds or proceeds of its collections to pay any and all indebtedness and obligations of Borrower owing to Lender under the terms of certain Promissory Notes issued by Lender to Borrower on September 18, 2009.

Such proceeds earmarked are:

| | |
|---|---|
| ACOE Task Order 4 (Project known as Savanna ACOE MATOG) | $  500,000 |
| General Partners share of proceeds from the sale of a building at Eglin | $  900,000 |
| Redstone Arsenal account receivable from Atlantic Marine Construction | $1,350,000 |
| Proceeds from a profit distribution due Borrower from Atlantic Marine Construction under a certain Teaming Agreement between the parties | $2,000,000 |

The Guarantor promises to remit these earmarked proceeds to pay off Indebtedness to Lender immediately upon receiving such funds. This limited personal guaranty constitutes an unconditional and continuing pledge of payment of these certain earmarked proceeds and shall continue in full force and effect as an obligation of the estate of the Guarantor in the event of the Guarantor's death.

The Guarantor hereby assumes the same obligations as a party to the above referenced Notes and, upon default of Borrower under these Notes, waives all rights to have Lender first attempt to secure payment of the Indebtedness from Borrower, any third party or pursue any other remedy before invoking the benefits of this personal guaranty. Demand for payment under this guaranty shall be effective upon the hand-delivery or placing of notice in the United States mail addressed to the Guarantor at the address stated below by registered or certified mail, return receipt requested. This guaranty shall be binding upon Guarantor and his personal representatives, heirs, devisees, and successors and shall inure to the benefit of and be enforceable by Lender and its successors and assigns.

This guaranty shall be governed by, and construed in accordance with, the internal laws of the State of Indiana, without regard to principles of conflicts of laws. Guarantor consents to the exclusive personal jurisdiction of the federal courts located in the Northern District of Indiana or the state courts located in Elkhart County, Indiana over any action arising out of or relating to this guaranty and waives any objection he may now or hereafter have to venue or to convenience of forum.

Salvador Murillo, an individual

Address: 4105 Equestrian Court
Flower Mound, TX. 75028

Dated: 9/18/09

EXHIBIT E

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.

**(a) PLAINTIFFS**

FIDELITY & DEPOSIT COMPANY OF MARYLAND

**DEFENDANTS**

MURILLO MODULAR GROUP, LTD., NM & SM DEVELOPMENT, LTD., LONESTRELLA, LLC, ALLO CONSTRUCTION & ENGINEERING, LLC d/b/a ACE MECHANICAL, NICK L. MACKIE, Individually, KRISTI MACKIE, Individually, SUSAN MURILLO, Individually, SALVADOR V. MURILLO, Individually, and LEONARD MURILLO, Individually

ORIGINAL

RECEIVED

FEB 25 2011

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Schaumburg, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Denton, Texas

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Christopher R. Ward
Justin P. Melkus
Michael D. Feiler
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202
PH: 214.651.4300

ATTORNEYS (IF KNOWN)

3-11CV0382-M

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Law | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patents | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholder's Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lund (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ref. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 RS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All other Real Property | | ☐ 550 Civil Rights | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Jurisdiction in part proper based pursuant to 28 U.S.C. § 1391(a)(2); Breach of General Agreement of Indemnity; Breach of Fiduciary Duties as Trustee; Common Law Indemnification; Attorney's Fees; and Costs and Interest; injunctive relief (temporary restraining order)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint

**JURY DEMAND:** ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY:

(See instructions):

**None**

JUDGE _____ DOCKET NUMBER _____

DATE  February 25, 2011    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____